# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF GEORGIA
# SAVANNAH DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. CR413-101 |
| ) | |
| ANTHONY MOBLEY, ) | |
| ) | |
| Defendants. ) | |

## REPORT AND RECOMMENDATION

A group of United States Marshals and local police officers arrested defendant Anthony Mobley on the morning of January 15, 2013, shortly after he left his room at the Masters Inn motel in Garden City, Georgia.[1] He was taken into custody pursuant to nine outstanding arrest warrants relating to a police detective's investigation into a residential burglary involving the theft of eleven firearms, including an AR-15 semi-automatic

---

[1] The room was rented in the name of Ms. Armoni Hopkins. Initially, the government challenged Mobley's standing to suppress items seized from the room (doc. 67 at 2), but after Mobley testified that he had been staying in the room for 42 days and paid the rent, it stipulated that he had a reasonable expectation of privacy in the room.

rifle. After taking Mobley into custody, the motel's front desk manager provided the agents with a key and asked them to sweep the room. During that sweep, officers discovered a large quantity of marijuana, prescription medication, a revolver, an iPod, and several rounds of ammunition. Mobley, who is charged with possession of the revolver and ammunition while a convicted felon and possession with intent to distribute the marijuana, moves to suppress the evidence discovered during the protective sweep, contending that the warrantless entry violated his Fourth Amendment rights.[2] (Doc. 62.) The government opposes his motion. (Doc. 67.)

During the evidentiary hearing on October 10, 2013, the Court heard testimony from the motel manager, Detective Matthew Smith, and Mobley. The essential facts are not in dispute.

During Detective Smith's investigation into the burglary, he learned from a suspect that Anthony Mobley had acquired possession of the stolen guns. Smith was able to gain access to Mobley's Facebook page where he

---

[2] He also asks to suppress the statements of his brother, Dennis Sterling. (Doc. 62 at 6.) He never developed that contention in his brief or at the hearing, so the Court deems it abandoned.

discovered a picture of Mobley holding a Sig Sauer Mosquito .22LR semi-automatic pistol. (Gov't Ex. 2.) The image was sufficiently high resolution that he could make out the serial number, which revealed that it was one of the stolen firearms.[3] Smith obtained a search warrant for Mobley's residence on Utah Street in October 2012. There, he found a black powder pistol under the bed in Mobley's room matching another of the stolen firearms. In addition, he found a Charter Arms .38 Special which was not connected to the burglary. The AR-15 and Sig Sauer Mosquito were not found.

After the search, nine warrants were issued for Mobley's arrest. Smith posted some information about Mobley to a regional intelligence service. Eventually, a Garden City, Georgia police officer identified Mobley's vehicle at the Masters Inn. He also learned from the motel's front desk manager, Chyqita Hendrix, that Mobley was staying in room 207 on the second floor, had been there for some time, and had been

---

[3] Mobley testified at the hearing that the pistol was a water gun purchased at a local flea market. Mobley's testimony on that and several other points was so entirely incredible that the undersigned would not believe him "if he was sitting on a bushel of bibles." *See United States v. Baron-Mantilla*, 743 F.2d 868, 870 (11th Cir. 1984) (affirming district judge's credibility finding that defendant's credibility was "totally lacking").

3

paying for the room, even though it was registered in the name of a Ms. Armoni Hopkins. Smith, along with approximately 14 other agents (about five officers each from Savannah, Garden City, and the United States Marshals) arrived at the motel and staked out Mobley's room by placing officers in positions to monitor the door without being discovered. At around 10:00 a.m., Mobley left the room and walked downstairs toward the motel pool before the agents approached him. Because they had reason to think Mobley had firearms in his motel room, they waited until he had distanced himself from the room before effecting his arrest.

Concerned that someone else may be armed and hiding in the room (the AR-15 had yet to be discovered, and the room was registered in the name of Ms. Hopkins), agents approached Ms. Hendrix to discuss the matter. She invited them to sweep the room and provided them with a new key card, which effectively revoked Mobley's keys. Smith entered the room along with several other agents, and they performed a routine sweep to verify that nobody else was inside. The entire sweep took less than half a minute. In plain view they spotted, but did not touch, a large quantity of marijuana, a digital scale, some prescription medication, and a

revolver. They exited the room, posted a sentry at the door, and came back some time later with a warrant to perform a more detailed search.

Mobley asserts that the protective sweep was improper, so the evidence must be suppressed. (Doc. 62 at 5-6.) The government contends that the agents had consent for the entry, the sweep itself was proper, and the contraband would have been inevitably discovered.[4] (Doc. 67 at 3-4.)

Whether or not the sweep was justified on its own merits, the agents had valid consent to enter the room. Ms. Hendrix explained that it is the motel's policy to evict any occupant who has been arrested, which is fully consistent with Georgia law. *See* O.C.G.A. § 42-21-3.1 (authorizing a hotel to evict an occupant without notice for cause, such as failure to abide by rules of occupancy or other actions by the guest); *Lewis v. Ritz Carlton Hotel Co., LLC*, 310 Ga. App. 58, 60 (2011) (holding that hotel was authorized to evict a guest who created a disturbance). Mobley no longer

---

[4] It also argues that the suppression motion was untimely and otherwise procedurally deficient. (Doc. 67 at 1-2.) The Court is satisfied that the suppression motion is detailed enough to survive under *United States v. Richardson*, 764 F.2d 1514, 1527 (11th Cir. 1985), though barely. And it explicitly gave defendant permission to file his out-of-time motion. (Doc. 60.)

had a reasonable expectation of privacy in the room once it reverted to the motel's control upon his arrest and the cancelation of his room keys. *See United States v. Mercer*, 541 F.3d 1070, 1074-75 (11th Cir. 2008) (finding room reverted to control of hotel before rental agreement had expired because defendant had been validly evicted under state law, had been detained, had only a night of occupancy remaining, and could not pay his bill); *United States v. Rambo*, 789 F.2d 1289, 1295-96 (8th Cir. 1996) (where hotel guest was justifiably ejected from hotel, rental period terminated and control reverted back to the management); *United States v. Haddad*, 558 F.2d 968, 975 (9th Cir. 1977) (same); *United States v. Spicer*, 2012 WL 1340386 at *7-10 (S.D. Ohio Apr. 17, 2012) (hotel management extinguished guest's reasonable expectation of privacy after locking occupant out of room; management could thus consent to police entry); *but see Stoner v. State of California*, 376 U.S. 483, 489 (1964) (management consent cannot save a search when there has been no eviction). Upon Mobley's losing control of the room, this became a valid consent search. *Schneckloth v. Bustamonte*, 412 U.S. 218, 219 (1973) (a search conducted pursuant to valid consent is an exception to the Fourth

Amendment's warrant requirement).

Even if the officers lacked consent to enter the room, the uncontested hearing evidence shows that the agents had reason to suspect that someone who could launch an attack might still be inside the motel room. *See United States v. Scott*, 517 F. App'x 647, 649 (11th Cir. 2013) (collecting cases articulating the rule that protective sweeps occurring after the arrestee has left the domicile must be supported by reasonable suspicion that a dangerous individual remained inside) (citing *Maryland v. Buie*, 494 U.S. 325, 334 (1990) (permitting officers to conduct a brief protective sweep of the areas immediately adjoining the place of an arrest from which an accomplice could launch an attack)); *see also United States v. Chaves*, 169 F.3d 687, 692 (11th Cir. 1999) ("[I]n the absence of specific and articulable facts showing that another individual, who posed a danger to the officers or others, was inside the warehouse, the officers' lack of information cannot justify the warrantless sweep in this case."). The agents suspected that Mobley had guns inside the room, perhaps even the AR-15, and the room had been checked out in another person's name. For all they knew, that person or someone else remained inside the room

posing a serious risk of harm to the investigating agents, the motel staff, or the public at large.

The sweep here was extremely short in duration, the agents touched nothing other than the shower curtain, and the agents left immediately upon its completion. As such, the Court is satisfied that the agents permissibly swept the room for accomplices. *See United States v. Biggs*, 70 F.3d 913, 916 (6th Cir. 1995) (protective sweep of motel room was permissible based on concerns that the officers had received information that another person may be meeting the defendant at the motel, despite the fact that the defendant was arrested outside of the room at his truck); *United States v. Beasley*, 199 F. App'x 418, 422–23 (6th Cir. 2006) (finding that 15–second protective sweep of hotel room was justified to "make sure other armed persons were not hiding behind beds or in the bathroom area," even though the defendant had been arrested in the parking lot outside).

Finally, the Court agrees with the government's assertion that the evidence would have been inevitably discovered. Under the inevitable discovery doctrine, "evidence is admissible that otherwise would be

excludable if it inevitably would have been discovered by lawful means had the illegal conduct not occurred. The Supreme Court first recognized this exception in *Nix v. Williams*, 467 U.S. 431, 104 S. Ct. 2501, 81 L.Ed.2d 377 (1984)." *United States v. Hernandez-Cano*, 808 F.2d 779, 782 (11th Cir. 1987). Here, Ms. Hendrix explained that it is motel policy to enter a room immediately after an eviction, and upon the discovery of guns or drugs in the room, they would have immediately called the police. As such, Mobley cannot exclude the evidence from trial. *Hernandez-Cano*, 808 F.2d at 784 (admitting evidence discovered in an unlawful luggage search because the contraband would have been inevitably discovered by airline employees).

For the foregoing reasons, Mobley's motion to suppress (doc. 62) should be **DENIED**.

**SO REPORTED AND RECOMMENDED** this  11th  day of October, 2013.

UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA